Good morning. Thank you, Your Honors, and may it please the Court, I'm Jonathan Sternberg and I represent the appellant, the Weitz Company. Weitz appeals in this case from a summary judgment in the defendant insurer's favor on Weitz's claims for equitable subrogation and unjust enrichment. This was error and should be reversed and remanded. Now to fully appreciate why, I think it's important to start, especially since this is a fairly complex case, to understand the triangle of relationships that led us to this point. The first side of the triangle is in which Weitz, for both itself and its subcontractors, had a contract with Hyatt to build a project for Hyatt in Florida. Now as the standard in the construction industry, the contract specified that Weitz and its subcontractors, on the one hand, and Hyatt, on the other, would waive the right to pursue claims against each other to the The contract also specified that Hyatt would require its insurers to waive all rights of subrogation against Weitz and the subcontractors. Now the second side of the triangle is where Hyatt then did obtain all risk property insurance from the defendants, which... This is the post-construction insurance you're referring to. That's correct, Your Honor. Yes. Which effectuated Hyatt's waiver of Weitz's liability. Now the third side isn't really a side. It's where Weitz and the defendants, who have no contract with each other. But still, through this industry standard triangle of relationships, Hyatt would look first to the defendants and their insurance before Weitz would face any liability. This lawsuit arose because the defendants failed to follow through on their end of the bargain. They left Weitz to pay Hyatt $53 million in damages that expert testimony below showed were insured damages for which the defendants would be liable. And what benefits did they unjustly retain? They were able to get away with not paying $53 million that Weitz had to pay instead. That's unjust. But that's not a retaining. As Cleary says, Illinois unjust enrichment, a basic element of unjust enrichment in Illinois, under your approach that it's a separate cause of action, that cause of action as defined in Cleary, quoting or citing the Supreme Court of Illinois, is there has to be benefits unjustly retained. Well, it's that the plaintiff conferred a benefit. The defendant was enriched by the benefit. What here happened is the plaintiff conferred a benefit on the defendants by paying damages to which the defendants would have been liable. You mean that the post-construction insurers should have paid? Yes, correct, Your Honor, who are the defendants in this case. And your theory that the post-construction insurers owed your client this money is what? That my client paid They were not named insurers in those policies, were they? No, that's how equitable subrogation works. And I think it's interesting, the Iowa cases explain equitable subrogation really well as opposed to contractual subrogation. Equitable subrogation arises from claims, from situations like this as a matter of law. The defendants were bound to pay something under that triangle of relationships. They failed and or refused to do so, and my client wound up paying that instead. They were bound to pay who under this coverage? They were bound to pay Hyatt. For post-construction things? That's correct, Your Honor. Your client was the constructor. They were the entity that built the thing. That's correct. And the policies don't just cover, you know, quote-unquote post-construction. It's any ensuing loss from earlier damages that are found out post-construction. I understand those policies contained limited coverage, didn't cover mold or faulty workmanship, and some of the issues were apparently faulty workmanship and mold. Is that right? Well, that's what the defendants have claimed. But again, in the summary judgment context, we have to view the facts in a light most favorable to my client. Expert testimony, which the defense actually doesn't mention at all in their briefs because it's pretty million dollars that Hyatt claimed as damages, were ensured damages under defendants' policies. And while I know coverage questions are issues of law, whether, I mean, that is the scope of coverage is an issue of law, the expert, especially in, you know, really complex engineering cases like this, has to determine whether those are ensuing losses or whether they're faulty workmanship. And he had determined that they are covered ensuing losses. In this claim, in this case, you're representing also your subs and their carriers in this quest for $52 million. Is that? I don't know that I would say representing them, but we had their rights of recovery assigned to us. So yes, White's is acting on behalf of ourselves and both and our assignors, which would be the subs. Well, where is that in the record that you have these assignments? Pages 900 to 920 of the appendix. It's in White's summary judgment response. It's not contested. That is... Do we have the assignment documents in the record? The assignment documents themselves, they are in the record. Yes, Your Honor. Pages... Do you mean the actual assignment contracts? I don't know that they're... How much these people get if you recover? Certainly. Well, that's not disputed. That is not a disputed fact. What's the fact that's undisputed? Pages 900 to 920 of the appendix is White's response to the defense's statement of material facts. And practically every single one is admitted, admitted. No, but what are those facts? How much is assigned and what's the undisputed amount? On page 28 of our brief, there's a chart which explains that pretty well. And I'd ask the court to turn to that if you can. We were... Our insurers paid $23,750,000 of our claim. This doesn't tell us what these other people get. Yes, they... You recover under the assignments. It does. The assignment contract would say that. Yes, and that's on page 904 and 905 of the appendix is an explanation of that, that Zurich and Greenwich, this isn't disputed either. I mean, the defense doesn't dispute this, and they've never contested the validity of the assignments. Zurich and Greenwich are our insurers. If White's recovers more than $6.5 million in this litigation, those insurers get 60%. So actually, they... And there's also... White's has to pay Zurich back for another insured of Zurich's who was one of our subcontractors, $891,000, which is 2.3% of the amount over $6.5 million. So in total, we have to pay back our assignors just over $24.5 million, or about 51% of the total cash that's been infused. And that's... Sorry, that's going out of, on the chart, $47,838,000, which is the total direct and assigned White's restitution recovery rights. Well, that's your response to the double recovery argument that you have to pay $24 million, you say? We have to pay $24 million, yes, Your Honor. $24 million to your insurers and to this other assignee who gets $890,000? It's actually the same insurer. They insured both us and a sub. All right. And that's precisely it. And I know the obvious response to that is, well, White's is still retaining 49% of this, and isn't that some sort of double recovery? But you have to think of this really not as just White's, but White's and the assignors as one single group in that triangle, right? We're a general contractor. We always contract above our subs. And so us, our subs, and by necessity, our own carriers and our subs carriers are all part of this one group. It is that group who is treated inequitably. And instead of having five lawyers up here arguing for five different parties, we have one instead. And that's not a double recovery. The whole group was treated inequitably. Furthermore, settlements are favored. And there's nothing at all wrong with White's who has to take the risk of this litigation under the assignments. I mean, it is us who are responsible for going to the district court, spending $2.6 million on lawyers there, for coming to this court, briefing and argument. For all of that, we're certainly entitled to some valid consideration. And again, the defense has never contested the validity of the assignments. So there isn't a double recovery. I'm raised by a red brief. Do you agree that you only raised a restatement 193 in the district court, not 221? I agree that we did not cite 221 by number. But I don't think that bears on the argument at all. All the cases... To answer the question, and the second thing, do you agree that you can only enforce whatever equitable subrogation rights Hyatt has? We can only enforce whatever equitable subrogation rights Hyatt has. Yes, we step into the shoes of Hyatt, except that... Your area. Well, no, I should temper that response, Your Honor. I would say that's the base. Yes. But equity makes a party whole. And this is, you know, a claim of ours is also unjust enrichment. But equity makes a party whole. I'm guessing Your Honor's referring to the... Give me a case that you get something better than being in Hyatt's shoes. I would say just... Other than your general, I mean, I... It's a general principle. Equity makes a party whole. Okay. But give me a case where someone's seeking equitable subrogation by standing in a... Contracting party's shoes, got something more because equity so demanded. I will be very honest. I don't have a case that says that, Your Honor. I doubt there's one that says the opposite either. And I'm guessing Your Honor's referring to the $4.9 million counterclaim that we are talking about, which would be in excess of what Hyatt was allowed. Hyatt made a claim of its own against these post-construction carriers, right? And settled it and gave a release. Is that right? Only for one of the three claims at issue, Your Honor. That was... There are three different basic classes of claims. There's what we're... What we and the other side are both calling the care center claim, which was the first one. Then the towers claim. And then the plaza deck claim. The only release, and Lexington admits this in their brief, applied to the care center claim, the very first one. So Hyatt didn't actually settle or anything for the second or third. Never made a claim against the... On the other two buildings, is that right? It certainly made insurance claims, yes. Well, it made an insurance claim as to the towers loss, the second of the two and the largest of the two losses. For whatever reason, and this was in June of 2005, the defendants simply closed the towers claim file. But then the insurance said, don't do that. And they reopened it at the insurance request. Seven months later, the insurance sued Weitz and its architect. Hyatt, meaning sued Weitz and its architect. So after that, that claim kind of languished. But certainly, there was a initial notice of loss in the towers claim. Now, I'd like to reserve three minutes for rebuttal. And I know we have lots to talk about. But if the court has any other questions, I'll reserve the rest of my time. Thank you, Your Honor. May it please the court. I am Charles Cole and I represent two of the defendant insurance companies, Lexington Insurance and Allied World. I will be presenting argument on behalf of the police. This is an astonishing piece of litigation. We have before us a general contractor that was responsible for the building of a defective building that has already collected more in cash than it paid to the owner and is still seeking to sue the owner's insurance companies. There is no precedent for this kind of lawsuit. Judge Jarvie granted summary judgment. He would have heard the case in a bench trial. He granted summary judgment instead. His judgment was right. In order to prevail here, Judge Jarvie saw that in order to prevail, Weitz would have to do two things. First of all, it would have to establish as a matter of equity that it is entitled to step into the shoes of Hyatt. And second, it would have to establish that Hyatt had valid claims. Judge Jarvie ruled that Weitz had done neither of these things, either one of which would be enough to stop this lawsuit, but it had failed to do either one. Judge Jarvie was correct. Let me explain why. Let's start with the question of whether Weitz had established as a matter of equity its right to subrogation. This involves an exercise of discretion. It is an exercise of equity. And the standard of review here is abuse of discretion. This Court's precedents say that's the standard when you're dealing with an equitable remedy. There was no abuse of discretion in rejecting subrogation. Well, why did the district court reject subrogation altogether? I see where he rejected the second prong of what you laid out. He found, page 836, he found that it would be, it didn't meet the elements for subrogation, including fairness, including the double recovery problem. He starts, he did it in the opposite direction from the way I did it, which is he started with the viability of Hyatt's claims and then went to the equitable issues. You're talking about this paragraph that begins finally. Yes, I think there are several paragraphs. All right. Okay. Weitz basically admits that our math is correct. Weitz paid out $53 million. It received $55.7 million. So it has already benefited to the tune of $2.7 million. Weitz also admits that our law is basically correct. That is, the purpose of equity is to make someone whole, not more than whole. And Weitz doesn't present a single case where anybody's ever been made more than whole by equity. Can you address the assignees? Because that's their answer to you on that. Yes. Now, moving to the assignment. First of all, it's a radical shift in their theory of the case. It's not in the complaint that governs the second amended complaint that's on file in this case. They belatedly, very belatedly moved to amend. That was denied as moot. They haven't appealed that in this court. So they're working from a complaint that alleges only injury to themselves. Second, under the assignment theory, Weitz is still being made more than whole. For some of the assignments, Weitz gets to keep whatever it recovers. For some of them, it keeps up to 100% up to a fixed amount, and then shares beyond that amount. But there's no dollar that it can receive that it does not get a piece of, either all of or some of. And so Weitz stands to profit from these assignments. And Judge Jarvi said, whatever may be the situation for these assignors if they had brought suit, Weitz cannot come out ahead in this transaction. It cannot effectuate a double recovery. That is on page 8036. And that's clarified by our supplemental appendix, which gives his corrected, typographically corrected order where he says clearly, Weitz cannot get a double recovery. Well, if Hyatt should have collected the $52 million from the post-construction insurers and didn't, and Weitz is able to step into its shoes now and collect the $52 million, then it can give that recovery back to its insurance carriers and reduce its insurance premiums down the road. Isn't that a possible scenario? Well, it doesn't have, Your Honor, it doesn't have an obligation to give back money. Let me read to you from the request for admissions. All told, as of December 19, 2012, Weitz had recovered $55.7 million from its liability insurers and its subcontractors and their liability insurers and sureties in connection with the Florida action, with a possibility of recovering even more. Weitz is not obligated to repay any of these funds, even if it recovers funds through the present action. Admitted. That's on page 921 of the appendix. It's not acting for its insurance carriers at all here, huh? It's acting for itself. Now, there are some sharing arrangements where Weitz collects 100% up to a certain amount, up to $6.5 million, and then after that has to share with some of the insurers. But that's all. There's no dollar that it's going to collect. It's either going to be collecting 100% of the dollar and keeping it for itself, or it'll be collecting a dollar and giving a portion of that dollar, if it collects enough, to the insurers. But Weitz has to collect something for itself. And Weitz comes out with more than being made whole. And that's the crux of it. It's not equitable for Weitz to be more than made whole, and that's what it's seeking the help of a court of equity for. So that covers the... The other thing is that this all assumes that these assignors have a claim that they can assert of subrogation. And there are problems with the assignors that haven't ever been confronted because this theory wasn't properly pled in the first place. For example... This is more like a contribution claim, isn't it? Or an indemnity claim on behalf of the insurance carriers who have paid out money that they probably shouldn't have had to pay out if the post-construction carriers that have paid up what they needed, right? Well, I don't know what you mean exactly by indemnity. Well, contribution maybe is the proper word. They ought to have a contribution from the post-convection. It's sort of a new theory here. We disagree that the post-construction insurers should have paid out. We disagree that... But accepting the premise of what you're talking about, Your Honor, the problem is Weitz remains in the middle making a profit, and it's not equitable. Now, the other problem that I was raising is that these assignors, they paid Weitz. They didn't pay... The subcontractor, for example, paid Weitz because it was alleged to have done a bad job in building the building. It paid off its own liability. The insurers did not insure Weitz. The insurers didn't have an obligation to pay Weitz. So you don't have the model that you need for subrogation where somebody pays a debt for which somebody else is primarily liable. That didn't happen here as to the assignors. It's not legal subrogation, but he's arguing equitable subrogation here, that he can forget about the legalities here. Well, it's not equitable because Weitz is coming out ahead on its losses. Now, let me just take a few minutes to look at the other side of the coin, which are the contractual defenses. We've got the care center claim. That was the one that was released. That doesn't seem to be very controversial. The Towers claim, what happened was there was notice of the Towers claims, but there was no proof of claim filed with the insurance company. It was not pursued, in other words. And there was a two-year statute of limitations in the contract saying you have to file suit within two years. That didn't happen. It wasn't because an actual claim asserted through a proof of claim was being considered by the insurance company. It just didn't happen. Basically, because Hyatt pursued Weitz, there was no pursuit of the insurance companies from 2006 to 2009 or 2010. Could you take a few seconds on why, under Illinois law, that contractual limitation applies to an equitable claim? It seemed to me the district court relied on that Seventh Circuit opinion by Judge Easterbrook, which said there was a contractual subrogation claim in that case, as I recall. And the contractual limitation period applied to that, but it didn't apply to an equitable contribution claim. And this is, as I understand it, an equitable subrogation claim, not a contractual subrogation claim. So query whether, under Illinois law... Well, in that case, the district court found that the Illinois statute of limitations did apply. The Illinois contractual? Yes. Well... Right. And that was not even appealed to the Seventh Circuit, I think, if we're talking about the same case. Well, I believe it was appealed, but if it's not fresh in mind, I think it's not a good use of time to talk about that case. But your position is, under Illinois law, the contractual limitation period is binding on an equitable claim like this? There is abundant precedent. All right. What's your best case, then? Well, hold on. Excuse me. I'm sure it's in your brief, if you don't have it in mind. I just wanted to give you a chance on that issue, because it is one that I'm focused on. In essence, what happens here is that there's a contractual claim that underlies what's going on here. That when you assert subrogation, you're not asserting restitution. You're asserting, I am subrogated to a particular claim. And the question is, what is that claim? And if that claim is a contract, then the contractual provision within the statute of limitations within the contract would govern. Yeah. So you're saying because Hyatt had a contract claim against the insurance company? Right. If it had been a tort claim, then a tort statute of limitations would govern. And that's what happened in the Moad case from Iowa that's also cited. Moad doesn't use section 221, the restitution provision, because it's looking at a subrogation lien. And it says, what is that underlying lien? It's a combination of workman's comp and a tort claim for uninsured motorist insurance. And it says, therefore, we're going to use the corresponding restatement provisions from the restatement for workman's comp and for tort. What it doesn't use is section 221. In fact, there is no case cited in these briefs, in our brief or the other side's brief, that says, let's use section 221 for a subrogation claim. When does the statute begin to run on those kind of claims? When the claim is not paid, a contribution claim? No, it doesn't begin to run when it's paid. It begins to run from the date of the loss. I can see the argument for it beginning from the date of payment. But Illinois has confronted that issue. And that's not the way it works in Illinois. It is the way it works in Florida. And that's the difference here on the choice of law. If the panel has no further questions, this judgment should be affirmed on both equitable and contractual grounds. Thank you. Mr. Sternberg, do you have some time? Three minutes. Glad I reserved three minutes. I have a few things to say, Your Honors. First of all, I think the case that Judge Collett and you are referring to, Judge Easterbrook, is the American Alliance case in 1999 from the Seventh Circuit, which is different than Cleary. We point that out in our briefs. American Alliance squarely holds that although Illinois courts have never directly addressed whether a suit limitation provision in a contract can apply to a party who was not a contract to it, the Seventh Circuit was confident that Illinois, based on how they construe these provisions, would not do that. In an equitable subrogation claim, specifically. They applied it to a subrogation claim, and they did not apply it to a contribution claim. They applied it to a contractual subrogation claim, which is different than an equitable subrogation claim. How is it different in a material way for purposes of that question? Certainly. Your claim is still based on the contract between Hyatt and the insurance companies, right? Yes, it is, but again, as a matter of equity, not as a matter of contract itself. I know, but in terms of whether the limitation period should apply, why shouldn't it apply if your equitable claim is premised on the contractual arrangement? Simply because, as Judge Easterbrook points out in American Alliance, in Illinois, a period of limitation set by contract binds only the parties to the contract itself. While we step into Hyatt's shoes as an equitable matter of law, if you will, we aren't Hyatt. We didn't agree to these same exact insurance contracts that Hyatt did. What matters here is the insurers were bound to pay this. They didn't. We paid it instead. I think it's important to also look that it's not White's itself that we're concentrating on. White's now has the rights of its assignors. I know they say that still White's will come out ahead, but that doesn't matter. White's still has the rights of the assignors, and that has to be given effect. They don't contest the validity of that. Just to be clear, we aren't claiming the full $57.9 million in this case, and we never have been. Certainly, there are $2.8 million that would be over the amount that we paid. We agree we're not entitled to that, most likely. Also, it's not true that we don't... I'd look at page 10 of his own brief, where he cites to pages 904 and 905 of our appendix, where he says he admits the contrary of that. We certainly do have to share 60% of anything we get over $6.5 million with our insurers, plus some more. As to the effect of the lack of a proof of claim, yes, a notice of claim was filed in the Towers loss, but not a proof of claim. Even under Illinois law, the effect of that is a question of fact, especially considering that the insurers did not deny coverage specifically for the failure to file a proof of claim. I see I'm just about out of time. If the Court has no further questions. Thank you, Your Honors.